## DONATI v. CLEVELAND GRAIN CO.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1915.)

No. 1297.

1. COURTS ⬤══322—JURISDICTION OF FEDERAL COURTS—PLEADING—NECESSITY OF PROOF OF ALLEGATIONS.

In an action of assumpsit in a federal court, a plea of non assumpsit does not put in issue the jurisdictional allegations of the declaration as to the citizenship of the parties, and plaintiff is not required to prove the same.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876–881, 887; Dec. Dig. ⬤══322.]

2. PLEADING ⬤══388—VARIANCE—IMMATERIALITY OF ALLEGATION.

In an action of assumpsit on a contract for the sale of corn for future delivery, the declaration alleged the making of the contract, that plaintiff in reliance thereon purchased the corn and was at all times ready to fulfill the contract, and tendered delivery, which defendant refused to accept, etc. The proof showed that plaintiff purchased the corn before the date when the sales ticket formally evidencing the sale was signed by the parties. *Held*, that there was no variance which precluded plaintiff's re

⬤══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

covery, as the allegation that plaintiff purchased the corn in reliance on the contract was immaterial.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1305–1308; Dec. Dig. ☞388.]

3. SALES ☞388—BREACH OF CONTRACT—INSTRUCTIONS.

Instructions considered and approved in an action for breach of a contract by which defendant purchased corn for future delivery.

[Ed.. Note.—For other cases, see Sales, Cent. Dig. § 1108; Dec. Dig. ☞388.]

4. CONTRACTS ☞313—BREACH—ACCRUAL OF RIGHT OF ACTION.

A positive refusal to perform a contract, although entire performance is not due, gives the other party a right of action for the breach at once.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1279; Dec. Dig. ☞313.]

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Action at law by the Cleveland Grain Company against V. Donati. Judgment for plaintiff, and defendant brings error. Affirmed.

Brockenbrough Lamb and John A. Lamb, both of Richmond, Va., for plaintiff in error.

Robert E. Scott, of Richmond, Va. (Scott & Buchanan, of Richmond, Va., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges.

KNAPP, Circuit Judge. The defendant in error (plaintiff below and hereinafter so called) carries on at Cleveland, Ohio, the business indicated by its name. Its agent and broker at Richmond, Va., is W. M. Lewis, a member of the Richmond Grain Exchange, and among the grain buyers of that city, to whom Lewis made more or less frequent sales, is the defendant Donati. It seems that shortly before October 14, 1912, Donati applied to Lewis for a price on 50 cars of corn for delayed shipments, and Lewis took the matter up with his company. A considerable correspondence followed by letter and telegraph, while negotiations continued between Lewis and the defendant. The details of their bargaining related to prices, both for natural and for kiln-dried corn, the quality of corn to be furnished, number of car loads which defendant would take, dates of delivery, etc. On the 14th of October they apparently reached an agreement, which Lewis was authorized by the plaintiff to make, and a memorandum of which he entered in his sales book as follows:

"October 14, 1912.

"Sold V. Donati for Cleveland Grain Co. 100 cars No. 3 yellow corn to be shipped as follows: 20 cars each January and February of natural corn at 62c., 20 cars each March, April, and May, kiln-dried 62½c."

A "sales ticket," as it is called, was made out by Lewis in duplicate, which he says was mailed to Donati, but which Donati says was brought to him in person. As the sales ticket was not promptly signed and returned by Donati, Lewis went to see him a few days later, sometime during the 21st, and it was then signed and delivered. It reads as follows:

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Adopted by the Richmond Grain Exchange. Sales Ticket, W. M. Lewis. Richmond, Va., Oct. 14th, 1912. Sold to V. Donati, of Richmond, Va., for account ·of Cleveland Grain Co., of Cleveland, O., 100 cars No. 3 yellow corn at 62c. and kiln-dried at 62½c. per bu. C. A. F. to Richmond, Va. Time of shipment not including day of sale: Jan. to May, inclusive. Days. Route C. & O. Terms of sale: Demand draft with bill of lading. Final weight settlement, shipper's official certificate. What inspection: Official. Remarks: Equal quantity each month. The natural corn to be shipped in Jan. & Feb'y, and the kiln-dried in March, April & May."

"[Signed]    W. M. Lewis, Broker.

"Accepted: V. Donati, Purchaser.

"Immediate shipment, 3 days. Quick shipment, 5 days. Prompt shipment, 10 days. Ticket must be dated day of sale."

Upon its delivery to him, Lewis mailed it to the plaintiff, and it was received about 10 o'clock on the morning of the 23d. After signing the sales ticket, and on the same day, Donati sent to the plaintiff by special delivery the following letter, which reached the plaintiff's office an hour or two before the sales ticket arrived:

"Richmond, Va., October 21, 1912.

"Cleveland Grain Co.—Gentlemen: Your sales ticket of October 14th for 100 cars No. 3 yellow corn is not in accordance with our agreement with Mr. W. M. Lewis. Our agreement was that we would take 100 cars of No. 3 yellow corn at 62c., we to have the privilege of transferring it at our option to No. 3 yellow corn kiln-dried at ½c. bu. more, or 62½c., the above to be delivered at Richmond at these prices, according to the amount that we require during January, February, March, April, and May, and any corn left over at the expiration of this time to take ¼ of 1c. per bu. ten days carrying charge, this carrying charge to begin on the 1st day of June, 1913. Please send a contract in accordance with the above, and return the sales ticket, which is not correct, and oblige."

"Respectfully,    V. Donati."

A lengthy reply, dated that day, was returned to Donati, in which promises ·of liberal treatment were made in respect of dates of shipment, if the defendant desired accommodation, ,and of carrying charges, in case the corn was not taken at the rate of 20,000 bushels a month as provided in the contract, but which seems otherwise unimportant.

Without reciting further details of the transaction, it suffices to say that Donati refused to accept the corn which the plaintiff was ready to furnish in accordance with the terms of the sales ticket, claiming that it did not express the contract actually made, that he signed the same conditionally, and that it was canceled by his letter of the 21st of October. Some correspondence followed between the parties; the plaintiff insisting that the contract evidenced by the sales ticket was valid and binding, and the defendant refusing to accept any other contract than the one outlined in his letter above quoted. In a communication under date of October 31st, the plaintiff offered a further concession, in addition to the promises made on the 23d, but coupled with the statement that, if this was not satisfactory, the contract would have to stand as originally executed. No reply seems to have been made to this offer, and early in December the defendant repudiated the contract. He was thereupon notified, through his counsel, that the Grain Company was prepared to perform the contract by making deliveries as therein provided, and that it would look to

him to make good any loss sustained if he persisted in refusing acceptance. Meanwhile there was a considerable decline in the price of corn, and this decline continued for some time afterwards.

On the 7th of January, 1913, the defendant was requested in writing to furnish shipping directions, but made no response to the request. On the following day he was served with notice that the contract would be offered for sale upon the Richmond Grain Exchange to the highest bidder at his risk and cost on the 14th of January, at an hour named, and that the plaintiff would look to him for any loss that might result therefrom. At the sale which took place accordingly, and which seems to have been fairly conducted, the highest bid was 59 cents, and the corn was sold at that figure. The plaintiff then brought this suit to recover damages for breach of contract. The case was tried in April, 1914, and the jury, under instructions of the court, returned a verdict for $3,607, besides interest, being the difference, plus expenses, between the contract price of the corn and the price realized on the sale.

The case comes to this court upon numerous assignments of error, which, so far as seems to us needful will now be considered.

[1] First is the question of jurisdiction, which has been presented at length by both sides, in brief and oral argument, but which we shall dispose of with little more than a statement of our conclusion. The declaration of the plaintiff begins with this allegation:

"The Cleveland Grain Company, a corporation organized and doing business under the laws of the state of Illinois and a citizen of that state, complains of V. Donati, a citizen of the state of Virginia, residing in the Eastern district thereof, to wit, at the city of Richmond in said district, of a plea of trespass on the case in assumpsit, for this, to wit."

Then follow voluminous counts, four in number, setting forth in various forms the alleged cause of action. There was a demurrer to the declaration, which was overruled, and thereupon the defendant filed the following plea of non assumpsit:

"And the said defendant, by John A. Lamb, his attorney, comes and says that he did not undertake or promise in manner and form as the said plaintiff hath complained. And of this the said defendant puts himself upon the country."

In the grounds of defense subsequently filed there are some 16 specifications, none of which contains the slightest intimation of any lack of federal jurisdiction. During the course of the trial no attempt was made from first to last to disprove any of the facts stated in the above-quoted paragraph of the declaration, nor did anything occur to suggest that want of jurisdiction was or would be claimed. Moreover there has been no pretense at any time that the facts respecting the citizenship of the parties are not precisely as set forth in the declaration. What happened was this, as we gather from the record: After the evidence was all in, and after counsel had renewed the motion to direct a verdict for defendant on other specified grounds, the further motion was made for a directed verdict, because the plaintiff had not proved that it is a citizen of Illinois. The court thereupon, against the objection of defendant, admitted parol proof of the fact by an officer of the company who was present at the trial.

We do not stop to consider whether this ruling was correct, because we are of opinion that under the pleadings no proof of plaintiff's incorporation or foreign citizenship was required. The error alleged is based solely upon the contention that the plea of non assumpsit, above set forth, is the equivalent of a general denial, and therefore put in issue every material allegation of the declaration. It is argued that, since allegations of diverse citizenship were necessary to show that the court had jurisdiction of the parties, it was equally necessary to prove the facts alleged in this regard in order to give the court jurisdiction to enter a judgment. We decline to ascribe to this plea any such legal effect, under the circumstances here presented. On the contrary, we hold that the plea in question put in issue only the contract liability set up in the various counts of the declaration, and that the allegations of incorporation and citizenship must be deemed admitted, because not in any way traversed by the plea of non assumpsit. In our judgment it would be little less than a travesty to predicate reversible error upon what seems to us in this case the merest technicality.

We have examined all the authorities cited by defendant upon this point, and are satisfied that none of them sustains his position. The case of Gastonia Cotton Mfg. Co. v. W. L. Wells Co. (decided by this court in 1904) 128 Fed. 369, 63 C. C. A. 111, appears to be relied upon and is quoted from at length, but we fail to see that it has even persuasive bearing upon the case at bar. Not only was that case governed in the matter of pleadings by the Code of North Carolina, which permits only the defenses of demurrer and answer, but the answer of the defendant contained this allegation:

"It has no knowledge or information sufficient to found a belief as to the truth of the allegation contained in the first section of the complaint, to wit, that the plaintiff is a corporation organized under the laws of the state of Mississippi, and a citizen and resident of that state, and therefore it denies the said allegation."

Moreover, the issue thus raised was the subject of extensive proof, and was specifically submitted to the jury for determination. It seems obvious that this case gives no support to the defendant's contention. Without referring to other decisions or indulging in further comment, we dismiss this assignment as unworthy of serious discussion.

[2] In the second place, it is contended with much earnestness that there is a fatal variance between the case proved by the plaintiff and the cause of action set forth in the first and second counts of the declaration. It will be sufficient to examine the second count in this connection, since the trial court allowed a recovery only on that count and according to the measure of damages therein claimed. In this count it is alleged in general terms that a contract of sale was made on the ——— day of October, 1912, and the sales ticket above quoted is set forth in full, purporting to show a sale on the 14th of that month. It is then averred that the plaintiff, in reliance upon the defendant's promise to take and pay for the corn as specified in the sales ticket, "thereupon provided itself with said corn, and was then and there ready, and at all times thereafter ready and willing and able, to comply with its said contract." But it turned out, as above stated, that the sales ticket, although dated the 14th, was not in fact signed by Donati until the 21st.

Therefore the defendant says that the plaintiff procured the corn, which the evidence shows was bought on the 14th and 15th, not because it had a contract with the defendant, for the sales ticket was not then signed, but because of advices received from Lewis, on or before the 14th, of which the defendant denies that he had any knowledge. In other words, it is insisted that the cause of action stated in this count of the declaration is a cause of action which arose, if at all, on the 14th of October, and is based upon a sales ticket bearing that date; whereas, the undisputed proof shows that no cause of action existed at that time, because the sales ticket, which constitutes the contract relied upon, was not executed until a week later, and that the plaintiff suffered no damage in consequence of buying corn to ship to Donati, because the corn with which the plaintiff "provided itself" was bought on the 14th and 15th, when there was no contract, and none of it after the 21st, when the sales ticket was actually signed.

We are not impressed with the force of this contention. In our judgment it is entirely immaterial when the plaintiff bought the corn, whether before or after the sales ticket was signed, whether upon advices from Lewis or otherwise, or whether it bought any corn at all on account of or with reference to the sale to Donati. Stated in another way, the alleged variance is believed to be of no consequence because the allegation respecting the purchase of corn is an immaterial averment, which could be stricken out without impairing in the least the statement of a complete cause of action. The substantial charge in this count is that a contract was made in October, 1912, the terms of which are stated in a sales ticket set forth in extenso, that the plaintiff has been ready and willing to perform its part of the contract, that performance was refused by the defendant, that he was duly notified of the time and place when the contract would be sold for his account and he be called upon to make good any loss resulting to the plaintiff, and that the corn was sold accordingly for 59 cents a bushel, which was the best price obtainable. This was entirely sufficient, in our opinion, and it follows, if the contract was binding upon the defendant at the time of its repudiation by him, that he should not be permitted to escape liability for the breach of his agreement by reason of any difference between the averments in question and the actual facts developed at the trial. The alleged errors here considered cannot be sustained.

[3] The remaining assignments of error, so far as they seem to require notice, are based upon rulings of the trial court, in the instructions given to the jury, which in effect define the rights of the parties under the sales ticket and otherwise go to the merits of the controversy. The court charged the jury in substance: (1) That the letters and telegrams between the plaintiff and Lewis constituted him the agent of the grain company, and authorized him in its name to make a sale to Donati upon the terms stated in the sales ticket; (2) that if they believed from the evidence that Lewis, on or prior to the 15th of October, 1912, filled out and signed the sales ticket as a result of negotiations between him and the defendant, and either mailed or carried it to Donati, and that the latter, after retaining it until the 21st, signed and delivered it to Lewis, to be forwarded to plaintiff, which was accord-

ingly done, "then the jury are further instructed that said sales ticket constituted a valid and binding contract between the parties, and they must disregard all the evidence in this case which tends to alter, vary, or add to said contract"; and (3) that the measure of plaintiff's dam-. ages, which it is entitled to recover under the other instructions, is the difference between the price stated in the contract and the amount realized at the sale on the 14th of January, 1913, together with the reasonable commissions of the broker making such sale and the cost of the reasonable advertisement thereof.

We are of opinion that the exceptions to this charge are not well taken, and will briefly state the reasons for our conclusion. It is not open to dispute that the sales ticket, taken by itself, is a complete contract, the terms of which are plain and definite; and in our judgment this contract became a binding obligation upon its delivery to Lewis for transmission to the plaintiff. It is insisted, however, that this is an erroneous view, because, first, the sales ticket was delivered conditionally; and, second, because it was canceled by the defendant's letter of the same date, October 21st, which was received by plaintiff at the time above stated. To the claim of conditional delivery there is a twofold answer. In the first place, the verdict of the jury, under the instructions above recited, is conclusive as to what occurred between Lewis and the defendant when the latter signed and delivered the contract. In the second place, the letter which defendant wrote shortly afterwards, and on the same day, contains no suggestion that the contract had been delivered upon any condition, whether the one now asserted or any other. This being so, we find no difficulty in holding, upon the facts here presented and the verdict of the jury, that this case does not come within the rule which permits the avoidance of a contract by proof that it was conditionally delivered.

Nor can the letter in question be regarded as a cancellation by defendant of the contract into which he had entered. No such intention is disclosed by its terms or indicated by its purpose. All he claims is that the sales ticket does not correctly state, in some minor and relatively unimportant particulars, the contract actually made with Lewis. This is the burden of his complaint. The record, as we read it, exhibits a constant effort by defendant in one way and another to prove that the written contract on which he is sued is somewhat different from his verbal agreement. In other words, he seeks to evade liability by showing that the sales ticket he signed does not accurately set forth the actual understanding between himself and plaintiff's agent. Upon familiar principles we hold that he cannot avail himself of such a defense, and we are therefore of opinion that the trial court was correct in its rulings upon the contract and in its instructions to the jury.

[4] As to the right of plaintiff to maintain an action at the time this suit was instituted, and as to the measure of recoverable damages, if not in other respects, the case is controlled by Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, in which numerous authorities are cited and the subject exhaustively discussed.

We find no reversible error, and the judgment will therefore be affirmed.